IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 23, 2020

**ALLEN HILL v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Knox County**
**No.114738      Bobby R. McGee, Judge**

**No. E2019-01994-CCA-R3-PC**

The Petitioner, Allen Hill, appeals from the Knox County Criminal Court's denial of his petition for post-conviction relief from his 2018 conviction for possession with the intent to sell 0.5 gram or more of cocaine, for which he is serving a twenty-year sentence as a Range II offender. The Petitioner contends that he received the ineffective assistance of counsel, rendering his guilty plea involuntary. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the appellant, Allen Hill.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; and TaKisha Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case arises from the Petitioner's negotiated guilty plea to possession with the intent to sell 0.5 gram or more of cocaine in exchange for a "hybrid" sentence. Although the Defendant was a Range I, standard offender, he agreed to a Range II sentence of twenty years' confinement at Range I service of 30%. *See Hicks v. State*, 945 S.W.2d 706, 709 (Tenn. 1997) (concluding that "a knowing and voluntary guilty plea waives an irregularity as to offender classification or release eligibility"). The judgment of conviction form, the guilty plea hearing transcript, and the plea agreement documents are not included in the record. However, at the post-conviction hearing, post-conviction counsel stated the following regarding the guilty plea proceedings:

. . . [The Petitioner] was charged with possession of over half a gram of cocaine with intent to sell. He had been apprehended, allegedly, with 8.5 grams of cocaine and a 9-millimeter weapon in his possession. He . . . eventually worked out a plea agreement, where he pled guilty to a non – the original charge was a school zone charge. He pled guilty to a non-school zone, Class B felony, but agreed to a hybrid sentence as part of the deal, where he pled outside of his range. But, also, because it was a hybrid sentence, the State also agreed that he would serve that at 30 percent, at a Range I release eligibility . . . . So, ultimately, he agreed to a sentence of twenty years at 30 percent [service].

On January 31, 2019, the Petitioner filed a post-conviction petition, alleging, in relevant part, that he received the ineffective assistance of counsel that rendered his guilty plea involuntary. The Petitioner asserted that he did not understand why he was classified as a Range II offender, that trial counsel did not explain adequately the structure of the hybrid plea agreement, and that he would have rejected the plea offer if counsel had explained the terms fully.

At the post-conviction hearing, the Petitioner testified that he and trial counsel discussed the allegations against him before the guilty plea hearing. The Petitioner said that counsel presented an initial plea offer of eleven years at 100% service and that the subsequent offer was twenty years at 30% service. The Petitioner understood that the charged offense involved a school zone sentencing enhancement, elevating the offense to a Class A felony at 100% service. The Petitioner understood that he pleaded guilty to an offense that did not involve the school zone enhancement.

The Petitioner testified that he did not understand the terms of the twenty-year sentence. He said that trial counsel explained the offer was for twenty years at 30% service. The Petitioner said that he asked counsel if the offer could "drop down," that counsel said that the offer would not be lowered, and that counsel stated the Petitioner "would make parole in six years, no matter what" pursuant to the offer. The Petitioner said that since he had pleaded guilty, he had learned he "can't make parole." He said counsel did not give him advice about whether he should accept the offer. The Petitioner said that counsel thought twenty years at 30% service was the best offer the defense would receive. The Petitioner stated that counsel said if the Petitioner rejected the offer and went to trial, the Petitioner would receive "25 to 100 percent." The Petitioner said that counsel explained the sentence range for a Class A felony was fifteen to twenty-five years. The Petitioner said that counsel did not advise him that he faced a possible three-year sentence at 100% service for the possession of a firearm during the commission of a dangerous felony charge and that this sentence would have been consecutive to any sentence for the drug-related charge.

The Petitioner testified that he accepted the twenty-year offer because trial counsel told him that he would receive "parole no matter what" after six years if he took "some drug classes and stay[ed] out of trouble" in prison. The Petitioner said that he did not know he pleaded guilty to a Class B felony, instead of a Class A felony. He knew, though, that a Range I sentence for a Class B felony was eight to twelve years. When asked if he understood why he accepted a twenty-year sentence, rather than a sentence between eight and twelve years, for a Class B felony, the Petitioner said that counsel talked "a lot of probation." The Petitioner said that counsel did not explain the difference between Range I and Range II offender classifications. The Petitioner said that he did not have any felony convictions before this case, although he had a conviction for misdemeanor domestic assault. He said that counsel did not explain why the plea offer required him to plead guilty as a Range II offender, although he had no previous felony convictions.

The Petitioner testified that he learned "later" that he was a Range I, standard offender, that the possible sentence for a Class B felony was eight to twelve years, and that if he had known this, he would have rejected the plea offer and gone to trial. He understood that if he received post-conviction relief, the original charges would be reinstated. He understood that if he were convicted of the original charges at a trial, he faced consecutive sentences of at least fifteen years and three years at 100% service.

On cross-examination, the Petitioner testified that he had a previous conviction for misdemeanor drug possession and that he was arrested for this charge when he was on probation for domestic assault. He agreed that he was on probation at the time of the present offenses. Relative to the present offenses, the Petitioner agreed that a police officer stopped him, that he had a gun and crack cocaine in his pocket, and that he had been on "the gang list" because of a previous unrelated incident. He agreed that the offenses occurred within 1000 feet of a school. He said that he was unable to post bond and that he spoke to his mother on the telephone during his pretrial confinement. He agreed he explained to his mother that he faced an effective eighteen-year sentence at 100% service, that he did not want to serve that much time, and that he was going to accept the twenty-year offer at 30% service.

The Petitioner testified that he did not understand the plea agreement because the judgment reflected the conviction offense as possession with the intent to sell cocaine rather than possession of cocaine. He said he did not have "any problems with [his] time." When the prosecutor asked the Defendant to explain his complaint, the Petitioner said that he did not know the conviction offense "was going to be called possession of a Schedule II" and that he thought the conviction offense was possession with the intent to sell cocaine.

The Petitioner testified that he thought he had pleaded guilty to possession with the intent to sell cocaine in exchange for a twenty-year sentence at 30% service. He said, though, that although the judgment reflected those terms, he was not "okay" with the plea agreement. He recalled the guilty plea hearing, reviewing the plea agreement with trial

counsel, and answering the trial court's questions at the hearing. He agreed it was announced at the guilty plea hearing that he was pleading guilty to possession with the intent to sell 0.5 gram or more of cocaine, that the sentence was twenty years as a Range II offender, and that he was pleading guilty outside of his sentencing range. He said, though, that he was going to serve up to sixteen years because he was "catching write-ups, fighting, and stuff like that." He agreed these incidents occurred after his guilty plea. He agreed that at the time of his guilty plea, he wanted twenty years at 30% service, rather than eighteen years at 100% service. He agreed that the issues he had in prison had made his "time" more difficult and that, as a result, he filed his post-conviction petition. He said that he also filed his petition because "of my time." He said that he had no previous felony convictions, that he had not been in trouble with the police, and that he would have gone to trial if he would have known what he knew now.

Trial counsel testified that he and the Petitioner discussed the facts of the case, reviewed the discovery materials, discussed the potential sentencing ranges, and reviewed the school zone enhancement provision. Counsel said that the Petitioner faced a minimum sentence of fifteen years at 100% service for the drug offense and a minimum three years at 100% service for the firearm offense and that consecutive service was required, for an effective eighteen-year sentence at 100% service. Counsel said that he and the Petitioner discussed a plea agreement several times and that the agreement required the Petitioner to enter an out-of-range guilty plea as a Range II offender with the understanding that the release eligibility date would remain at a Range I percentage. Counsel said that although the agreement required an increased number of years, the Petitioner received the opportunity for release much earlier. Counsel said that he explained the terms of the agreement and the alternatives to the Petitioner. Counsel said he told the Petitioner that the Petitioner did not have to accept the offer and that counsel would take the case to trial if the Petitioner desired. Counsel said that he and the Petitioner discussed the possible defenses at a trial and the various sentencing possibilities. Counsel said that after several conversations, the Petitioner wanted to accept the offer.

On cross-examination, trial counsel testified that the facts made the Petitioner's case difficult. Counsel said that the potential suppression issues "weren't great" in connection with whether the police had reasonable suspicion to stop and question the Petitioner. Counsel said that he and the Petitioner discussed the sentencing ranges for Range I and Range II offender classifications. Counsel agreed that the Petitioner was a Range I offender based on his criminal history. Counsel said he explained to the Petitioner that the firearm charge would be dismissed and the school zone sentencing enhancement would be removed in exchange for pleading guilty as a Range II offender. Counsel said that he also explained the release eligibility would remain at 30%, which was a favorable outcome. Counsel said he explained to the Petitioner that he would not have a guaranteed release date but that after serving 30% of the sentence, minus any service credits, the Petitioner would become eligible for parole and could petition the parole board for release.

Trial counsel testified that he never told a client that the client would definitely be released from confinement. He said that he and his clients discussed the earliest date of possible release. Counsel said that he advised the Petitioner consistently with this practice and that he told the Petitioner a parole date depended upon his behavior in confinement. Counsel said he told the Petitioner that the lack of previous felony convictions would weigh in favor of parole and that participating in programs during his confinement would provide a higher likelihood of release once the Petitioner became eligible for parole. Counsel said he told the Petitioner that the Petitioner would have the opportunity to earn service credits but that nothing was guaranteed. Counsel denied that he provided the Petitioner with an estimated parole date.

At the conclusion of the hearing, the post-conviction court denied relief. The court determined that the Petitioner understood he faced a possible effective sentence of eighteen years at 100% service if he went to trial and were convicted as charged in the indictment. The court found that the Petitioner understood the plea offer provided the Petitioner with the opportunity to receive parole after six years of service. The court found that the possibility of release after six years was attractive to the Petitioner and that the Petitioner accepted the offer, although the agreement required him to plead guilty as a Range II offender with a twenty-year sentence at 30% service. The court determined that the Petitioner entered a voluntary guilty plea, that he understood the terms of the agreement, and that he understood the guilty plea proceedings.

The post-conviction court found that the "real problem" was the events that had transpired since the guilty plea hearing. The court found, based upon the Petitioner's testimony, that he had "trouble" in prison and that, as a result, his potential parole date had been adversely impacted. The court determined that the Petitioner's complaints were not the result of trial counsel's representation. The court found that counsel explained the terms of the plea agreement adequately. The court determined that the Petitioner did not receive the ineffective assistance of counsel and that the Petitioner's guilty plea was voluntarily, knowingly, and intelligently entered. This appeal followed.

As a preliminary matter, we note that at the evidentiary hearing, post-conviction counsel requested that the post-conviction court take judicial notice of the guilty plea hearing transcript and "anything that's in the technical record, including the Rights Waiver form." Counsel stated that the prosecutor had the transcript and that the transcript could be made a part of the record at a later time. The court stated, "Very well. No, I don't have a copy" of the transcript. The record does not reflect that the transcript and the underlying guilty plea documents were received as exhibits, and neither are contained in the record before this court. *See, e.g.*, *State v. Bunch*, 646 S.W.2d 158, 160 (Tenn. 1983) (stating that the Petitioner has the burden of preparing a fair, accurate, and complete account of what transpired in the trial court relative to the issues raised on appeal); *see also* T.R.A.P. 24(b). However, the parties do not dispute the circumstances of the offense as recited by post-conviction counsel at the evidentiary hearing. We conclude, based upon the facts of this

case, that the record is sufficient for appellate review. *See State v. Miller*, 737 S.W.2d 556, 558 (Tenn. Crim. App. 1987) ("When the record is incomplete, or does not contain the proceedings relevant to an issue, this Court is precluded from considering the issue.").

The Petitioner contends that the post-conviction court erred by denying relief. He argues that he received the ineffective assistance of counsel because trial counsel failed to explain adequately the terms of the plea agreement regarding the out-of-range offender classification. The Petitioner asserts that if counsel had explained the terms of the plea agreement adequately, he would not have pleaded guilty. The State responds that the post-conviction court did not err by denying relief. We agree with the State.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2012). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2012). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment of the United States Constitution, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . , are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference,

however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The record reflects that the Petitioner understood the terms of the plea agreement. The Petitioner understood that he had been charged with possession with the intent to sell 0.5 gram or more of cocaine in a school zone and with possession of a firearm during the commission of a dangerous felony and that he faced a possible effective sentence of at least eighteen years at 100% service. The Petitioner acknowledged that before the guilty plea hearing, he and his mother discussed the terms of the plea offer of twenty years at 30% service. The Petitioner told his mother that he faced a possible eighteen-year sentence at 100% service, that he did not want to serve that much time in prison, and that he was going to accept the twenty-year sentence at 30% service. Furthermore, the Petitioner conceded his complaint was not with his sentence but, rather, that he would be unable to obtain parole after serving 30% of the twenty-year sentence because of problems he had in prison. The Petitioner had received prison write-ups and had been involved in fights. The Petitioner recalled that at the guilty plea hearing, he and trial counsel discussed the terms of the guilty plea agreement and that he answered the trial court's questions about the agreement. The Petitioner agreed the plea agreement reflected that he would receive a Range II sentence of twenty years, that he was pleading guilty outside of his offender classification, and that he would be eligible for parole after serving 30% of the twenty-year sentence. The Petitioner acknowledged that at the time of the guilty plea hearing, he wanted twenty years at 30% service, rather than eighteen years at 100% service.

Furthermore, the record reflects that the post-conviction court credited trial counsel's testimony that counsel advised the Petitioner about the State's evidence, possible defenses at a trial, the terms of the plea offer, and the possible sentencing outcomes after a trial. Counsel advised the Petitioner that he faced a minimum sentence of fifteen years at 100% service for the drug offense with the school zone enhancement and a minimum three years at 100% service for the firearm offense and that consecutive service was required, for an effective eighteen-year sentence at 100% service. Counsel advised the Petitioner that the offer required the Petitioner enter an out-of-range guilty plea as a Range II offender with the understanding that the release eligibility date would remain at a Range I percentage. Counsel likewise explained to the Petitioner that the school zone enhancement would be removed and the firearm violation would be dismissed pursuant to the offer. Counsel did not tell the Petitioner that he would have a guaranteed release date. Counsel explained to the Petitioner that he could petition for parole after serving 30% of the twenty-year sentence and that the Petitioner's release depended upon his behavior during confinement.

As a result, we conclude that the record supports the post-conviction court's determinations that the Petitioner's guilty plea was not the result of the ineffective assistance of counsel and that the Petitioner's guilty plea was knowingly and voluntarily entered. The Petitioner is not entitled to relief on this basis.

The judgment of the post-conviction court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE